**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JAMES RODRIGUEZ,**

    **Plaintiff,**

vs.                                                             **Case No. 8:04-cv-2753-T-MSS**

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    **Defendant.**
_____/

**ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying claims for period of disability, disability insurance benefits and supplemental security income under the Act.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (the "ALJ"), the exhibits filed and the administrative record, as well as the pleadings and memoranda submitted by the parties in this case.

**I.   Background**

    **A.   Procedural History**

Plaintiff filed applications for period of disability, disability insurance benefits

and supplemental security income on June 30, 1999. (T. 250) Plaintiff alleged an onset of disability on January 31, 1997, due to arthritis of the lower back and hip, with right hand carpel tunnel syndrome. (T. 15) His applications were denied initially and upon reconsideration. Plaintiff requested a hearing, which was held on February 21, 2001, before ALJ Richard J. Ouellette. (T. 24) In a decision dated August 22, 2001, the ALJ denied Plaintiff's claims for benefits. (T. 14-24) The Appeals Council denied review of the decision on June 4, 2002. (T. 2-3) Plaintiff then sought review of the decision in this Court. In a decision issued in July 23, 2003, Plaintiff's claim was remanded to the Commissioner for further consideration. Specifically, the Court remanded the case due to the ALJ's failure to discuss the disability opinion of Dr. Harris McIlwain. (T. 267)

A second ALJ hearing was held on March 16, 2004. Prior to that hearing, the ALJ updated the record and ordered a consultative examination from rheumatologist, Dr. Hasan Zeya (T. 337) At the new hearing a vocational expert ("VE") offered testimony. The ALJ issued another unfavorable decision on October 14, 2004. (T. 250-59) Because this decision was consequent to a prior ALJ decision, the Plaintiff initiated this judicial action, without further appeal to the Appeals Council.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in the ALJ's decision. (T. 247-59) Plaintiff notes in his memorandum that he accepts the testimony and documentary evidence as set forth in the ALJ decision. (Pl. Br. at 4) By way of summary, Plaintiff

complained he became disabled due to arthritis of the lower back and hips, as well as arthritis of various joints, including knees, "ankle" and "wrist." (T. 106)

At the ALJ hearing, Plaintiff presented the ALJ with medical records from Plaintiff's treating and examining physicians. After considering the evidence, the ALJ found that although Plaintiff suffered from severe impairments, including right carpal tunnel syndrome, chronic back pain and obesity, he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (T. 254)

The ALJ found Plaintiff's allegations of disabling impairments were not fully credible. (T. 258) The ALJ determined that although Plaintiff could not perform any of his past relevant work, he retained the residual functional capacity ("RFC") to perform a wide range of light to sedentary work. (T. 258, Finding No. 11) After eliciting testimony from the VE, the ALJ determined that Plaintiff retained the RFC to perform jobs that exist in substantial numbers in the economy, including surveillance system monitor and receptionist/information clerk. (T. 258, Finding No. 12) The ALJ therefore concluded Plaintiff was not disabled under the Act. (T. 258, Finding No. 13)

Plaintiff contends that the decision of the ALJ must be reversed and remanded because (1) the ALJ failed to develop the VE testimony; (2) the ALJ failed to develop the record fully; and, (3) the Commissioner failed to weigh the substantial evidence in this matter.

3

For the reasons that follow, the Undersigned **AFFIRMS** the decision of the Commissioner.

## II.     Standard of Review

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law *de novo*.  See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993).  If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard.  McDaniel v. Bowen, 800 F.2d 1026, 1029-30 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required.  Jamison v. Bowen, 814 F.2d 585 (11th Cir. 1987).

**III.  Discussion**

    **A.  WHETHER THE ALJ FAILED TO DEVELOP THE VE's TESTIMONY**

Plaintiff first contends that the ALJ failed to develop the VE's testimony. Plaintiff states that the ALJ found that Plaintiff could perform work as a surveillance system monitor (DOT § 379.367-010) and as a receptionist/information clerk (DOT § 237.367-018).  However, Plaintiff claims that the above is an inaccurate recitation of the VE's actual testimony. Specifically, Plaintiff claims that the VE stated that the receptionist/information clerk position was not a DOT listed position, but was a general category cited in other sources.  (T. 375-76)

In support of this position, Plaintiff cites extensively from Social Security Ruling ("SSR") 00-4p.  Specifically, Plaintiff argues that the ALJ erred by not asking the VE whether his testimony was consistent with the DOT, as provided by SSR 00-4p.

The Commissioner responds that the VE used a general term not used in the DOT and explained, "[t]here are no specific jobs listed in the DOT but this general category is listed in the Department of Labor's Occupational Outlook Handbook." (T. 376) The Commissioner contends, therefore, that the ALJ was not required to question the VE further because the VE compared his testimony to the DOT. (T. 376)

Because questions arose about how to ensure conflicts between occupational

5

evidence provided by a VE and information in the DOT are resolved, the Social Security Administration ("SSA") issued Policy Interpretation Ruling SSR 00-4p to clarify the standards used to identify and resolve any conflict. SSR 00-4p. According to SSR 00-4p, generally, occupational evidence provided by a VE should typically be consistent with the occupational information supplied by the DOT. According to SSR 00-4p, neither a VE's opinion nor DOT automatically trumps when there is a conflict. When there is an apparent unresolved conflict between a VE opinion and the DOT, the adjudicator must ask the VE whether an inconsistency exists between his testimony and the information available in the DOT. If the VE offers a reasonable explanation for the conflict, the ALJ may then rely upon the VE opinion to support a determination about whether the claimant is disabled.

The weight to which an occupational definition in the DOT is entitled, when the definition is in conflict with the VE's testimony, differs among the Circuits. The Eleventh Circuit addressed that issue prior to the issuance of SSR 00-4p in <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229-30 (11th Cir. 1999). In <u>Jones</u>, the Eleventh Circuit held, in an issue of first impression, that "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." In <u>Jones</u> the Eleventh Circuit reviewed the differing views on this issue from other Circuits and adopted the Sixth Circuit's approach from <u>Conn v. Secretary of Health and Human Services</u>, 51 F.3d 607, 610 (6th Cir. 1995) (holding that the SSRs do not require the Commissioner or the VE to rely on classification in the DOT, the ALJ may rely on the VE's testimony even

where it is inconsistent with the DOT). The court in Jones also found that while the DOT is considered the best source for how a job is generally performed, it is not the sole source of admissible information concerning jobs. Jones, 190 F.3d at 1230. The court in Jones further found that an ALJ should supplement the DOT with local information about jobs in the region. Id.

In this case, the ALJ did not specifically ask the VE whether his opinion was consistent with the DOT; however, the VE offered, on his own accord, an explanation for the discrepancy between his testimony and the information in the DOT. (SSR 00-4p). Specifically, the VE explained that, although the job of receptionist/information clerk was not described in the DOT, the job was listed in the 2002-2003 edition of the Occupational Outlook Handbook (the "OOH") and also in data from the Florida Agency for Workplace Innovation, which is referred to by the VE as the Florida Agency Board, Force in the Nation ("FABFN'). (T. 376) Based on the description in the OOH and local information from the FABFN, the VE concluded that Plaintiff was capable of performing a job as a receptionist/information clerk given his RFC. (T. 257) The ALJ was within his authority to rely upon that explanation in rendering his opinion. The fact that the ALJ assigned a specific DOT number to that job in his decision is irrelevant in light of the VE's testimony and Plaintiff's counsel's cross-examination of the VE during the ALJ hearing.

In any event, the VE identified *two* jobs that Plaintiff is capable of performing, given his skill and exertional levels: receptionist/information clerk and surveillance

system monitor. (T. 375)  Plaintiff contends that the finding that Plaintiff could perform the job of surveillance system monitor is also "flawed" because there was no inquiry "as to the consistency between the testimony and the DOT." (Pl. Br. at 12) Without citation to legal authority or to record evidence, Plaintiff claims that if he "requires a sit/stand option, it is evident that ergonomic issues would come into play; that is, the positioning of the monitor(s) for optimum viewing would reasonably need to change depending on whether the watcher was standing or sitting." (Pl. Br. at 12)

A VE is called to testify based on his or her familiarity with job requirements and working conditions. Vaughan v. Shalala, 58 F.3d 129 (5th Cir. 1995)(citing Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986) for the proposition that "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.")  In this case, the VE, after considering Plaintiff's abilities, attributes and skills determined that Plaintiff could perform the job of surveillance system monitor. The VE was aware of the sit/stand option when he determined that Plaintiff could perform the job of surveillance system monitor.  In addition, Plaintiff's counsel was present during the ALJ hearing and had the opportunity to cross-examine the VE on this issue.  During his cross-examination, Plaintiff's counsel failed to ask the VE any questions about how potential ergonomic issues raised in his memorandum might prevent the job of surveillance system monitor from being compatible with a sit/stand

8

option.[1] (T. 376-78) In the absence of any evidentiary or legal support, Plaintiff's contention that the surveillance system monitor job would be precluded by Plaintiff's need for a sit/stand option is without merit.

Further, the Court notes that a Plaintiff must establish he is not capable of performing any of the jobs identified by the VE. Long v. Shalala, 902 F. Supp. 1544, 1546 (M.D. Fla. 1995). Here, Plaintiff has failed to prove that either of the jobs would be incompatible with his RFC.

### B. WHETHER THE ALJ FAILED TO DEVELOP THE RECORD.

Plaintiff next contends that the ALJ failed to develop the record. With regard to this issue, Plaintiff argues that the ALJ erred in failing to develop the evidence from medical sources. Specifically, Plaintiff claims that the VE failed to comply with the directive of this Court when instead of re-contacting Dr. Harris McIlwain, he ordered a consultative examination. The Commissioner claims that re-contacting a physician is only necessary when the evidence is "inadequate" to determine whether Plaintiff is disabled and, in this case, there is adequate evidence to make that determination. (Comm. Br. at 10) Specifically, the Commissioner claims that

> "[i]n the case at bar, the issue is not inadequacy of evidence, but rather inconsistency between Dr. McIlwain's opinion and the other evidence. This situation is covered by 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2): If any of the evidence in your case

---

[1] During the ALJ hearing Plaintiff's counsel did ask the VE if Plaintiff could still perform either of the two jobs identified if Plaintiff, after sitting for thirteen to twenty minutes, had to stand up and move around for five minutes or so. (T. 377) The VE responded, "Yes. That's consistent with [the ALJ's] hypothetical." (T. 378)

9

> record, including all medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and see whether we can decide whether you are disabled based on the evidence that we have.

It is the claimant's burden to provide medical evidence showing that she is disabled. 20 C.F.R. § 416.912(c). Nonetheless, the ALJ has the burden of developing a full and fair record. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). The Regulations provide that the ALJ may order a consultative examination. 20 C.F.R. §§ 416.912(f) and 416.917 (emphasis added). A consultative examination is not always required in order for the ALJ to satisfy her duty to fully and fairly develop the record; however, it may be required in order for the ALJ to render an informed decision if the record establishes that such an examination is necessary. Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)(citation omitted); Pearson v. Bowen, 866 F.2d 809 (5th Cir. 1989).

The ALJ's duty to re-contact a treating physician is set forth in 20 C.F.R. § 416.912(f), which states:

> We will first contact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available . . . Generally, we will not request a consultative examination until we have made every reasonable effort to obtain medical evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests or procedures or is known to be nonresponsive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until

> we have made every reasonable effort to obtain this evidence from your medical sources.

See Norman v. Apfel, 100 F. Supp. 2d 1352, 1352 (N.D. Ga. 2000).

In this case, the Court remanded the case because "the [ALJ] did not give proper consideration to Dr. McIlwain's opinion. This failure was prejudicial and therefore warrants a remand." (T. 267) The Court specifically stated in the decision, that it would not address Plaintiff's alternative argument that the ALJ should have ordered a consultative examination. (T. 267) On remand, the ALJ ordered a consultative examination instead of re-contacting Dr. McIlwain.

The Court finds that the ALJ's decision to order a consultative examination rather than re-contacting Dr. McIlwain is supported by substantial evidence. On remand, the ALJ specifically discussed Dr. McIlwain's opinion and cited reasons for affording it little weight. The ALJ wrote:

> Similarly, Dr. McIlwain's assessment that [Plaintiff] is disabled has little value because, at the time of the evaluation, he had seen Plaintiff at only one office visit at which the physical evaluation revealed no synovial thickening of the small joints of the hands, wrists, elbows, or shoulders with normal range of motion with pain passively; and knees had minimal pain, no swelling, and normal range of motion. In short, Dr. McIlwain's assessment cannot be afforded great weight because he treated [Plaintiff] only for a short period of time, his conclusion that [Plaintiff] is disabled is not supported by his objective evaluation, and his opinion on the welfare form gives little explanation for his conclusion.

(T. 255-56)

In addition to reviewing Dr. McIlwain's opinion and noting the weight that he

11

assigned it, the ALJ ordered a consultative examination of Plaintiff by Dr. Hazan Zeya.  Plaintiff visited Dr. Zeya on April 1, 2004. (T. 337)  On April 20, 2004, Dr. Zeya submitted his report to the Division of Disability Determination. (T. 337) During his examination of Plaintiff, Dr. Zeya noted some Plaintiff exhibited some problems, particularly joint pain (T. 340) and a paravertebral muscle spasm in the cervical area. (T. 341)  However, Dr. Zeya also found that Plaintiff had no signs of atrophy around weight-bearing joints, shoulders, forearms or hands (T. 340) Plaintiff had normal reflexes and no sensory abnormalities (T. 340) Plaintiff could perform dexterous movements with his hands (T. 341) Plaintiff could also tandem walk, walk on heels and toes, squat and rise, hop, arise from a chair and was able to get on and off of the examination table. (T. 341) In his report, Dr. Zeya further noted that Plaintiff was "uncooperative" and exhibited "behavioral inconsistencies" in that he appeared strong and muscled yet was reluctant to participate in a range of motion test.  (T. 341; 255)  Dr. Zeya's examination of Plaintiff did not provide any objective criteria to support Plaintiff's complaints of pain. (T. 255)

In addition to Dr. Zeya's opinion, the record contains the opinions of two non-examining medical experts who reviewed the records and completed RFC assessments. Based on this record review, one of the non-examining experts found Plaintiff capable of light work (T.162) and the other found him capable of medium work. (T. 170)

Based on the above, the Court finds that re-contacting Dr. McIlwain was not

necessary in this case. This is not a case in which there was inadequate evidence; rather, it is a case in which the ALJ concluded that the findings of Plaintiff's doctor, Dr. McIlwain, were inconsistent with the other objective medical evidence of record. Dr. Zeya's findings provided further support for the ALJ's determination on remand that Plaintiff is not disabled.

### C. WHETHER THE ALJ FAILED TO FULLY AND ADEQUATELY WEIGH THE SUBSTANTIAL EVIDENCE IN THIS MATTER.

Finally, Plaintiff contends that the ALJ failed to fully and adequately weigh the substantial evidence in this matter. For the reasons set forth above, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled under the Act.

### IV. Conclusion

For the reasons cited above, the Court **AFFIRMS** the decision of the Commissioner. The **CLERK** is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida on this 29th day of March 2006.

_____
MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record

13